## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**KAREN BAKA**

                                                  **Plaintiff,**

**V.**     Civil Action No.: _____

**CITY OF NORFOLK, VIRGINIA,**

                                                  **Defendant.**

### COMPLAINT

COMES NOW the plaintiff, Karen Baka (hereinafter "Baka") and for her Complaint against City of Norfolk, Virginia (hereinafter "Norfolk"), states as follows:

### The Parties

1. At all times relevant to this action, Baka was an individual and a resident of, Virginia Beach, Virginia and an employee of Norfolk.

2. At all times relevant to this action, Norfolk was a municipal corporation employing more than 500 individuals in the Norfolk, Virginia area. At all times relevant to this action, Norfolk was an "employer" within the meaning of Title VII §701, 42 U.S.C. §2000e(b) in that Norfolk was a person engaging in an industry affecting commerce and had fifteen or more employees for each working day in each of the twenty or more calendar weeks during the years that it employed Baka or the preceding calendar year.

## Jurisdiction and Venue

3. This case involves an action discrimination in employment based on sex, hostile work environment based on sexual harassment and unlawful retaliation against Baka for opposing discrimination all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.

4. This Court has subject matter jurisdiction pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1343(4).

5. Baka timely filed charges of gender discrimination, sexual harassment and retaliation with the United States Equal Employment Opportunity Commission ("EEOC") on September 2, 2020, charge number 437-2020-0144.

6. On April 28, 2021, Baka received Notice of Right to Sue letter from the United States Equal Employment Opportunity Commission.

7. Baka has exhausted her administrative remedies prior to filing this action.

8. Venue is proper in this Honorable Court as all acts giving rise to plaintiff's cause of action occurred within the Eastern District of Virginia in the Norfolk division.

## Facts

9. Baka became employed by Norfolk in July of 2005 as a firefighter and paramedic. From July 2005 through the present, Baka performed all of her job duties in a manner that met or exceeded Norfolk's requirements.

10. In 2012, Baka accepted a position in the Norfolk Fire Marshall's Office as a fire inspector. In 2012, Baka achieved the rank of Fire Investigator with the Norfolk Fire Marshall's Office.

11. Baka is a female and a member of a protected class within the meaning of Title VII of the Civil Right Act of 1964.

### History of Gender Discrimination, Sexual Harassment and Retaliation in the Norfolk Fire Marshall's Office

12. The Norfolk Fire Marshall's Office has historically been dominated by men including at the leadership/management levels.

13. At all times relevant to this action, Chief Roger Burris ("Burris"), Chief Jeffrey Wise ("Wise"), Chief Michael Brooks ("Brooks") and Captain Michael Rose ("Rose") were all employees of Norfolk and direct supervisors of Baka. Burris, Wise, Brooks and Rose are all male.

14. The male supervisors in the Norfolk Fire Marshall's Office, including Burris, Wise, Brooks and Rose, routinely acted with hostility towards the few female fire investigators working in the office, including Baka.

15. Rose and other male supervisors, including Burris, Brooks and Wise would require the female investigators, including Baka, to have a male coworker present with them during law enforcement activities whereas similarly situated male coworkers (and less experienced male coworkers) were allowed to conduct such law enforcement activities alone.

16. Rose and other male supervisors in the Norfolk Fire Marshall's Office, including Wise and Brooks would routinely deny Baka and other female fire investigators the opportunity to attend extra work related educational

events and training opportunities. Norfolk allowed Baka's similarly situated male coworkers to participate in such activities. As a direct and proximate result of Norfolk excluding female investigators, including Baka, from the additional education and training opportunities, Baka lost the opportunity for valuable training and experience in commercial fire code investigation and enforcement which hampered her career advancement.

17. Rose and Burris regularly made hostile sexist statements to Baka and other females during work. For example, on one occasion Baka noticed that male coworkers with the same or less seniority in the department than her had been assigned new city issued work trucks. When Baka inquired as to when she might be assigned a new city issued truck, Rose responded that "girls will get trucks when girls can drive trucks."

18. On another occasion, during a meeting with Captain Rose, fire investigator Renee Criswell stated that she had the qualifications to work as a bomb squad technician. Rose, Criswell's supervisor, laughed at her and told her in a demeaning manner that the bomb squad job required "working with heavy equipment." When investigator Chris Spence (male) expressed an interest in the job, Rose made no such remarks. (See Exhibit A--attached Affidavit of Renee Criswell). Baka was made aware of these remarks by Rose.

19. Rose also made sarcastic verbal comments to Renee Criswell when she would use heavy equipment such as "Well, they let girls so that?" (See

Exhibit A, attached Affidavit of Renee Criswell). Baka was made aware of this comment.

20. On multiple occasions, when Baka or investigator Renee Criswell (female) would express knowledge based concerns about work issues during staff meetings that were called to discuss such issues, Rose and other male supervisors would tell them that the meeting was not a "bitch session." No such comments were made to similarly situated male employees.

21. Norfolk would routinely assign less desirable job duties to the female fire inspectors (including Baka and Criswell) such as bed bug complaints and suspected hoarders. Conversely, Norfolk would assign more desirable jobs to similarly situated male coworkers such as hood inspections, school inspections and training opportunities. This disparate treatment resulted in Baka's male coworkers obtaining more inspection credits than Baka. Inspection credits are necessary for career advancement. (See Exhibit A attached Affidavit of Renee Criswell). Baka was aware of this disparate treatment of males compared to females.

22. Throughout Baka's employment at the Norfolk Fire Marshall's Office, Chief Burris routinely propositioned Baka to enter into a sexual relationship with him. Baka refused his advances.

23. Throughout her employment with Norfolk, Chief Burris would send text messages to Baka in which he professed his love for her. Burris also made these statements orally to Baka. If Baka would not respond to his emails, Chief Burris would retaliate against Baka so as to alter her working

conditions.  (See Attached Exhibit A -- Copies of text messages from Burris).

24. When Baka would refuse Chief Burris' advances, Chief Burris would retaliate against her and complain that she was "ignoring him."

### Baka's Opposition to Gender Discrimination, Retaliation by Norfolk and Continued Hostile Work Environment For Female Employees, Including Baka

25. Baka made a written complaint to Norfolk complaining of gender discrimination in the Fire Marshall's Office including complaints to Chief Wise and Chief Brooks regarding the conduct of Chief Roger Burris and Captain Ansell. Until July 2018, Burris was the Fire Marshall for Norfolk.

26. Following Baka's complaints of gender discrimination by Burris and Ansell, Chief Burris approached Baka and several other coworkers, unannounced, and asked them in an angry tone whether they had the "testicles and ovaries" to tell him "what was going on" with the complaints against him. These statements were made by Burris prior to Baka applying for the position of Assistant Fire Marshall in November 2018.

27. Following the complaints of Baka and others of gender discrimination by Burris and Ansell, Burris had a meeting with Scott Phillips Gartner and Karen Barnes, both now former employees of the Norfolk Fire Marshall's Office, and told them that if anyone "went behind his back" then those persons would "feel my wrath."  These statements were made by Burris prior to Baka applying for the position of Assistant Fire Marshall in November 2018.

28. On June 5, 2018, a female coworker of Baka, Renee Criswell ("Criswell"), made a complaint of gender discrimination to her supervisor, Lt. Eric Phillips ("Phillips"), that Rose engaged in gender discrimination against both Criswell and Baka.

29. As a result the Criswell complaint of gender discrimination, Norfolk asked Baka to meet with Norfolk Fire and Rescue's Office of Professional Standards officer Captain Nicholas Nelson ("Nelson") and City of Norfolk Human Resource Specialist Erika Petty ("Petty") for an "informal inquiry" as to the treatment of women in the Norfolk Fire Marshal's Office.

30. On August 3, 2018, Baka met with Nelson and Petty in the office of Petty, located at 100 Brooke Ave #500 with a scheduled 'inquiry' time of 08:30-09:30. Nelson asked Baka if she experienced gender discrimination by Capt. Rose. Baka clearly answered in the affirmative and cited several examples of gender discrimination by Rose including but not limited to the fact that Rose would require females (including Baka) to have a male present during law enforcement activities whereas male coworkers could conduct law enforcement activities alone. Baka told them that Rose had stated to Baka that "girls can't drive trucks."

31. In 2018, pursuant to the chain of command and the practice of the Norfolk Fire Marshall's Office, the results of the "informal inquiry" including the statements by Baka regarding Captain Rose to Nelson and Petty on August 3, 2018, were reported to Chief Wise following the meeting. (See

Attached Exhibit C-- Affidavit of Nicholas Nelson, Fire Marshall for the City of Norfolk).

32. Notwithstanding Baka's complaints of gender discrimination at the "informal inquiry", there was no mediation offered, and there was no change in behavior by Rose.

33. In fact, after the August 3, 2018 meeting wherein Baka complained of gender discrimination by Rose, Baka experienced a significant increase in hostile treatment by Rose. For example, when Baka would ask Rose a question, he would become angry, hostile, condescending and would yell at her. This conduct became progressively worse after the August 2, 2018 meeting.

34. Baka applied for promotion to the position of Assistant Fire Marshall in October 2017, March 10, 2018, and again on November 2, 2018. Each time, Norfolk decided to promote a male coworker with less seniority, less job related experience and less job related education than Baka.

35. On August 30, 2019, Baka filed a complaint for gender discrimination in employment against Norfolk in this Court, case number 2:19-cv-00458 that specifically named Chief Roger Burris, Michael Rose and Chief Jeffrey Wise (hereinafter "the lawsuit"). The lawsuit was served on Norfolk on September 19, 2019 and Norfolk filed responsive pleadings on October 1, 2019. The lawsuit is still pending.

36. On October 24, 2019, a local television station published a news story about gender discrimination in the Norfolk Fire Marshall's office, provided

details about the lawsuit as well as Baka's complaints about management and another lawsuit filed by a former female employee, Karen Barnes, claiming gender discrimination hereinafter ("the news story"). The news story can be found at: https://www.wavy.com/news/local-news/norfolk/special-report-norfolk-under-fire-for-treatment-of-female-employees.

37. A few weeks later, on November 15, 2019 and on November 22, 2019, Norfolk required Baka to take multiple drug tests. Rose was Baka's direct supervisor at the time. During Norfolk's internal investigation of Renee Criswell's complaint of gender discrimination against Rose, Baka specifically complained that Rose engaged in gender discrimination. Rose accompanied Baka to one of the drug tests. Prior to the lawsuit and the news story, Norfolk had never required Baka to take a drug test after hiring her. Moreover, Norfolk required Criswell to submit to a "random" drug test soon after she complained of gender discrimination in 2018.

38. Following the lawsuit, the news story, and the drug tests on November 15, 2019 and November 22, 2019, Rose's gender based hostile conduct towards Baka intensified in that he would leave her out of important intra-department correspondence to the point she felt ostracized and shunned by management. When Rose would communicate with her, he would often become easily angered would yell at her over minor issues. Rose did not exhibit such behavior toward similarly situated male employees.

39. On December 19, 2019, Rose sent a work related text messages to all of the male fire investigators but specifically excluded Baka and Rene Criswell, the only two female investigators left in the department and the same two investigators that made complaints of gender discrimination against Rose.

40. Rose and the Norfolk fire Marshall's Office required its female investigators (Baka and Renee Criswell) to strictly adhere to a policy requiring that they wear a full uniform when appearing to testify in Court proceedings. However, Norfolk did not required similarly situated male employees to adhere to the purported mandatory dress policy.

41. On November 19, 2019 and November 20, 2019, a male fire investigator named Chris Spence appeared in court for trial testimony without wearing his full uniform in direct violation of department policy. Rose as well as Lt. Lambert (male) and Lt. Walston (male) were present during these trial dates and were aware that Lambert did not wear a full uniform. Lambert was not reprimanded for this violation.

42. However, during that same time period Rose and Norfolk demanded that Baka and Renee Criswell (female) strictly adhere to the dress policy. In fact, Renee Criswell was disciplined by Rose and Norfolk for violating the uniform policy. Baka was made aware of the disciplined imposed on Criswell and aware the Rose and Norfolk did not enforce the dress policy on similarly situated male coworkers.

43. On April 27, 2020 supervisor Michael Rose continued to display ongoing hostility, retaliation, and gender discrimination against Baka at the scene of a fire where Baka was the lead investigator. Rose came upon the scene, belittled Baka in front of coworkers and stated to Norfolk Fire-Rescue employee Captain Wayne Oporto as well as other fire department members in the area, that, "I am a captain. I outrank her (Karen). I am going to make sure she knows that I do." Rose then ordered Baka to perform punitive physical labor while a similarly situated male investigator, Christopher Spence, was not ordered to perform physical labor. Rose advised Spence, in Baka's presence, that he could relax as Baka worked by herself. These actions by Rose were so offensive to Capt. Oporto that he made a verbal followed by written complaint to his supervisor, Chief Sydney Carroll about how offended he was by witnessing Rose's conduct towards Baka.

44. From November 15, 2019 through June 2020, Norfolk regularly charged Baka and other female employees for sick leave or vacation time for any time off. However, similarly situated male employees were not so charged when they took such time off. Baka was aware of this disparate treatment of similarly situated male employees compared to female employees.

45. On January 6, 2020, Baka and Renee Criswell, the only two female fire investigators, were verbally reprimanded for not answering phone calls from a Lt. Eric Phillips when Baka and Criswell were off duty and not on call. Norfolk did not reprimand any similarly situated male employees for

        failing to answer such calls. Baka was aware of this disparate treatment of similarly situated male employees compared to female employees.

46. Following the lawsuit and the news story, in July 2020 Christopher Spence (male) was issued his own personal work office while Baka was required to conduct office work in a public workspace. Private office space is a more favorable work condition and Norfolk normally assigns such private office space giving preference for seniority (time in office). Baka has significant seniority over Spence but was denied the private office in favor of Spence, a less senior male of the same rank.

47. Following the Criswell investigation and the lawsuit, on January 13, 2020, Lt. Phillips (male) advised Baka during a work meeting that she was "being watched by all of the supervisors" because of the lawsuit.

### Count I        (Title VII—Hostile Work Environment and Sexual Harassment)

48. Paragraphs 1 through 47 of the Complaint are hereby fully incorporated by reference as if fully re-alleged herein.

49. Norfolk routinely treated its female employees, including Baka, less favorably than similarly situated male employees.

50. As a term and condition of her employment, Norfolk regularly subjected Baka to an offensive, demeaning, humiliating and hostile work environment based upon Baka's gender (female).

51. The conduct of Norfolk was unwelcome, was based upon Baka's gender and was severe, regular and pervasive enough to create an objectively

hostile, offensive and abusive working environment based upon sex/gender so as to alter the terms and conditions of Baka's employment.

52. The offensive conduct of Norfolk was severe, regular and pervasive enough to cause Baka to suffer humiliation and stress at work as well as psychological and physical harm that interfered with her job performance.

53. The offensive, abusive and openly hostile work environment based upon gender was created by supervisory employees of Norfolk that directly controlled Baka's work environment. Norfolk was aware of an condoned this conduct.

54. Even after Baka and others (including Criswell, Karen Barnes and Scott Phillips-Gartner) reported the severe and pervasive harassment by Baka's supervisors to the department and to Norfolk's human resources department, Norfolk took no remedial action.

55. As a direct and proximate result of the objectively hostile, abusive and offensive work environment based upon gender that was created and maintained by Norfolk, Baka has suffered damages including denial of job promotions, constructive termination of employment, stress, mental and physical pain and suffering and injury as well as loss of enjoyment of life.

## Count II     (Title VII—Retaliation)

56. Paragraphs 1 through 55 of the Complaint are hereby fully incorporated by reference as if fully re-alleged herein.

57. Baka engaged in protected activity when she gave truthful statements to investigators during her interview related to the complaint filed by her

coworker Renee Criswell that she had experienced gender discrimination by Captain Rose and the Norfolk Fire Marshall's Office.

58. Baka engaged in protected activity when she filed the EEOC charges and the lawsuit opposing gender discrimination by Norfolk.

59. Baka suffered adverse employment actions as a direct and proximate result of her truthful statements to the investigators opposing gender discrimination by Rose and others in the Fire Marshall's Office.

60. Baka suffered adverse employment actions including but not limited to disparate treatment as well as an objectively hostile work environment as a direct and proximate result of her truthful statements to the investigators opposing gender discrimination by Rose and others in the Fire Marshall's Office.

61. Baka suffered adverse employment actions including but not limited to disparate treatment as well as an objectively hostile work environment as a direct and proximate result of her filing the lawsuit.

62. Norfolk knowingly and intentionally discriminated against Baka, in direct retaliation for Baka's making complaints during the Criswell interview opposing gender discrimination made by Rose as well as Baka's prior opposition to gender discrimination by Chief Roger Burris.

63. Norfolk knowingly and intentionally discriminated against Baka, in direct retaliation for Baka filing the lawsuit.

64. As a direct and proximate result of Norfolk's retaliation, Baka suffered damages including lost employment opportunities, stress pain and suffering, inconvenience and loss of enjoyment of life.

**Count III    (Sex Discrimination—Virginia Code §2.2-3905 and §2.2-3908)**

65. Paragraphs 1 through 64 of the Complaint are hereby fully incorporated by reference as if fully re-alleged herein.

66. At all times relevant to this action, Norfolk was an "employer" as that term is defined by §2.2-3905, Code of Virginia.

67. At all times relevant to this action, Baka was an "employee" of Norfolk as that term is defined by §2.2-3905, Code of Virginia.

68. Norfolk discriminated against Baka in the terms and conditions of her employment because of her sex in violation of §2.2-3905, Code of Virginia.

69. Norfolk and Rose altered the terms and conditions of Baka's employment because of her sex in violation of §2.2-3905, Code of Virginia.

70. As a direct and proximate result Norfolk's discrimination and violations of §2.2-3905, Code of Virginia, Baka has suffered damages including denial of job promotions, constructive termination of employment, pain and suffering and loss of enjoyment of life.

71. This court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over Baka's Virginia state law claims as they are so related to the federal question claims asserted herein that they form part of the same case or controversy.

### Count IV    (Retaliation §40.1-27.3, Code of Virginia)

72. Baka hereby restates paragraphs 1-71 of the Complaint.

73. Norfolk disciplined, threatened, discriminated against and penalized Baka in direct retaliation for Baka's reporting violations of the Title VII of the Civil Rights Act and violations of the purported policy of Norfolk prohibiting gender discrimination in the workplace.

74. Norfolk's actions in disciplining, threatening, discriminating against and penalizing Baka for Baka's reporting violations of the Title VII of the Civil Rights Act and violations of the purported policy of Norfolk prohibiting gender discrimination were in direct violation of §40.1-27.3, Code of Virginia.

75. As a direct and proximate result of Norfolk's violations of §40.1-27.3, Code of Virginia, Baka has suffered damages.

76. This court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over Baka's Virginia state law claims as they are so related to the federal question claims asserted herein that they form part of the same case or controversy.

### Count V    (Whistleblower Protection Act-- §2.2-3011, Code of Virginia)

77. Baka hereby restates paragraphs 1-76 of the Complaint.

78. At all times relevant to this action, Baka was an "Employee" and Norfolk was an "Employer" as those terms are defined in the Virginia §2.2-3030 of the Code of Virginia (The Fraud and Abuse Whistle Blower Protection Act).

79. At all times relevant to this action, Norfolk, Rose, Wise, Brooks, Burris and Davis engaged in "Misconduct" and "Wrongdoing" as those terms are defined in §2.2-3010, Code of Virginia by violating Title VII of the Civil Rights Act (gender discrimination), the Virginia Human Rights Act, and in violating Norfolk's purported formally adopted code of conduct prohibiting gender discrimination in employment.

80. Baka is a "Whistleblower" as that term is defined by §2.2-3010, Code of Virginia in that Baka made good faith reports of the misconduct of Norfolk, Rose, Wise, Burris, Brooks and Davis both to her superiors, Captain Nelson, during the Criswell investigation and in filing charges with the EEOC on January 8, 2019 and on September 2, 2020 and in filing the lawsuit.

81. Norfolk discriminated and retaliated against Baka in direct retaliation for Baka's reporting of the misconduct and wrongdoing of Norfolk, Rose, Burris, Brooksm Wise and Davis in violation of §2.2-3011 Code of Virginia.

82. As a direct and proximate result of Norfolk's violation of §2.2-3011 Code of Virginia, Baka has suffered damages including lost wages and benefits and has lost promotion opportunities with Norfolk.

83. This court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over Baka's Virginia state law claims as they are so related to the federal question claims asserted herein that they form part of the same case or controversy.

## Jury Demand

84. Baka demands a trial by jury on all issues so triable in this action.

## Relief Sought

WHEREFORE, Baka moves this Honorable Court to enter judgment in her favor against Norfolk and to award:

A. All of Baka's lost salary and benefits until entry of judgment in this action plus interest on such back pay;

B. Baka's lost future salary and benefits;

C. Compensatory damages for emotional pain and suffering, stress, inconvenience and loss of enjoyment of life;

D. Compensatory and punitive damages pursuant to §2.2-3908, Code of Virginia.

E. An award of Baka's attorney's fees and costs incurred in this action as well as other costs incurred in this action.

**KAREN BAKA**

/S/   W. Barry Montgomery
W. Barry Montgomery, Esq.   (VSB# 43042)
*Counsel for Karen Baka*
KALBAUGH, PFUND & MESSERSMITH, PC
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
Tel:   (804) 320-6300
Fax:  (804) 320-6312
E-mail: barry.montgomery@kpmlaw.com